```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS


DEBRA SLATTERY,

                    Plaintiff,

vs.                                    Case No. 15-1129-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.
```

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On September 20, 2013, administrative law judge (ALJ) Rhonda Greenberg issued her decision (R. at 25-34). Plaintiff alleges that she had been disabled since January 31, 2009 (R. at 25). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the application date of

4

November 23, 2011 (R. at 27).  At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 27). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 30).  After determining plaintiff's RFC (R. at 30), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 32).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 33).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 34).

**III.  Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530

5

n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).

When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. <u>See</u> <u>Southard v. Barnhart</u>, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. <u>Spicer v. Barnhart</u>, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  <u>Cruse v. U.S. Dept. of Health & Human Services</u>, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  <u>Brown v. Commissioner of the Social Security Administration</u>, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately

assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

The ALJ's RFC findings limited plaintiff to light work, with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently. Plaintiff can stand and/or walk for 6 hours, and sit for 6 hours in an 8 hour workday. Plaintiff can occasionally climb ramps and stairs, but not climb ladders, ropes or scaffolding. She can frequently balance, but occasionally stoop, kneel, crouch; she cannot crawl. Plaintiff can tolerate frequent exposure to temperature extremes, fumes, odors, dusts, gases, poor ventilation, and can occasionally be exposed to humidity (R. at 30). As noted above, the ALJ must include a narrative discussion describing how the evidence supports his/her RFC findings.

A state agency medical consultant, Dr. Hitchcock, opined that plaintiff can occasionally lift and/or carry 20 pounds, and frequently lift and/or carry 10 pounds. He also indicated that plaintiff can stand and/or walk for 6 hours and sit for 6 hours in an 8 hour workday (R. at 101-102). As noted by the ALJ, Dr. Hitchcock's exertional limitations limited plaintiff to light work (R. at 32). The ALJ then stated that plaintiff is not as limited as Dr. Hitchcock thought because treatment notes show that musculoskeletal examinations are essentially normal, except

9

for some occasional tenderness.  Thereby, the ALJ gave this opinion little weight (R. at 32).

Although the ALJ gave the opinions of Dr. Hitchcock (limiting plaintiff to light work) little weight, the ALJ's own RFC findings limit plaintiff to light work with the exact same exertional limitations as Dr. Hitchcock set forth.  The ALJ's determination that plaintiff is not as limited as Dr. Hitchcock opined, and finding that she is giving his opinions little weight, are directly contradicted by the ALJ's RFC findings, which are identical to the exertional limitations set forth in Dr. Hitchcock's opinions.

The ALJ also considered the opinions of Dr. Max Self, described by the ALJ as plaintiff's treating physician (R. at 31).[1]  Dr. Self completed a medical source statement-physical, which limited plaintiff to lifting and/or carrying 15 pounds occasionally and 10 pounds frequently.  Dr. Self opined that plaintiff could sit for 4 hours and stand/walk for 3 hours in an 8 hour workday.  Dr. Self opined that plaintiff could never kneel, crouch or crawl, could occasionally climb, balance and

---

[1] In her brief, defendant argues that Dr. Self was not a treating physician, despite a contrary finding by the ALJ. Defendant argues that Dr. Self only examined plaintiff on two occasions (Doc. 12 at 13 n.5). However, the ALJ was silent regarding what weight, if any, the ALJ gave to the frequency of treatment by Dr. Self. An ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). A reviewing court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

stoop, and could occasionally handle, finger and feel. Dr. Self noted that plaintiff should avoid any exposure to vibration, and avoid moderate exposure to weather, hazards and heights (R. at 380-381). The ALJ stated that treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. Additionally, the ALJ found that Dr. Self's opinions were inconsistent with his own physical examination (R. at 31-32).

First, a medical source's statement about what an individual can still do is medical opinion evidence that an ALJ must consider together with all of the other relevant evidence when assessing an individual's RFC. A medical source statement must not be equated with the administrative finding known as the RFC assessment. ALJ's must weigh medical source opinions under the rules set out in 20 C.F.R. §§ 404.1527 and 416.927 (as set forth above in this opinion), providing appropriate explanations for accepting or rejecting such opinions. SSR 96-5p, 1996 WL 374183 at *5. Medical findings as to work-related limitations would, if accepted, impact the ALJ's determination of RFC, but that does not make the medical findings an impermissible opinion on RFC itself. Krauser v. Astrue, 638 F.3d 1324, 1332 (2011). Therefore, the opinions of Dr. Self must be weighed under the factors set forth in the regulations, as set forth previously in this opinion.

Second, the only specific reason the ALJ gave for discounting the opinions of Dr. Self was that the opinions of Dr. Self were inconsistent with his own physical examination (R. at 32). However, this point is stated in conclusory fashion, without reference to those portions of the record which are allegedly inconsistent with his opinions. The ALJ should identify what in Dr. Self's own treatment records he finds inconsistent with her specific opinions in the medical source statement, and explain the inconsistency. Krauser, 638 F.3d at 1331 and n.3; see Hamlin v. Barnhart, 365 F.3d 1208, 1217 (10th Cir. 2004).

Not only did the ALJ completely fail to identify any inconsistencies between the opinions of Dr. Self and his examination findings, a review of the medical records from those findings indicates that Dr. Self diagnosed obesity, fibromyalgia, degenerative disc disease, degenerative cervical spinal stenosis, carpal tunnel syndrome and irritable bowel syndrome (R. at 377-378, 386). Dr. Self also indicated that he reviewed 45 pages of records from prior primary care providers as well as an MRI from 2008 showing mild stenosis at the lower cervical level (R. at 386). There is nothing in these examination findings and diagnosis that are, on their face, inconsistent with Dr. Self's opinions as set out in his medical source statement.

12

As noted above, the ALJ must give good reasons in her decision for the weight she ultimately assigned to the opinions of the medical source. If the ALJ rejects the opinion completely, she must give specific and legitimate reasons for doing so. Although the ALJ never indicated what weight, if any, she accorded to the opinions of Dr. Self, it is clear from the ALJ's RFC findings that the ALJ either rejected or gave little weight to the opinions of Dr. Self. However, the ALJ failed to give any valid reasons for the weight she assigned to the opinions of Dr. Self. The only specific reason for discounting the opinions of Dr. Self were stated in conclusory fashion; the ALJ failed to identify what in the treatment records were inconsistent with the opinions expressed by Dr. Self. The court finds that the ALJ failed to give specific and legitimate reasons for giving little or no weight to the opinions of Dr. Self.

In her brief, defendant argued that the ALJ's decision giving "little" weight to the opinions of Dr. Hitchcock is harmless error because the ALJ essentially adopted the opinions of Dr. Hitchcock (Doc. 12 at 12). As noted above, the ALJ's RFC findings regarding plaintiff's exertional impairments are identical to the limitations set forth by Dr. Hitchcock. However, if an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to

it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

The ALJ clearly failed to give any explanation for the weight she accorded to the opinions of Dr. Hitchcock; in fact, the ALJ adopted the opinions of Dr. Hitchcock even though the ALJ accorded his opinions little weight.  Furthermore, the ALJ provided no explanation for rejecting the opinion of Dr. Self in favor of Dr. Hitchcock.  The court has already found that the ALJ failed to give specific and legitimate reasons for giving little or no weight to the opinions of Dr. Self.

For these reasons, the court concludes that the ALJ's RFC findings are not supported by substantial evidence.  As was true in the case of Kency v. Barnhart, Case No. 03-1190-MLB (D. Kan. Nov. 16, 2004; Doc. 21 at 8), it is not at all clear from the ALJ's decision how the RFC, as a whole, was derived.  The ALJ's decision is unreviewable because the court is unable to discern how the ALJ reached her decision.  On remand, the ALJ must adhere to SSR 96-8p, which requires that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 16th day of May 2016, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge